No. 15,790.

Shore et al. *v.* Wallace.

(186 P. [2d] 581)

Decided November 10, 1947.

Mr. Lawrence R. Temple, Mr. Albert P. Fischer, for plaintiffs in error.

Mr. Alden T. Hill, Mr. Lloyd E. Williams, Mr. Ralph E. Coyte, for defendant in error.

In Department, before: Mr. Justice Hilliard, Mr. Justice Hays, and Mr. Justice Luxford.

302

THE parties herein appeared in reverse order in the trial court. We will herein refer to defendant in error, C. J. Wallace, as Wallace, or plaintiff; to plaintiff in error, Henry Shore, as Shore, and to plaintiff in error, The Water Supply and Storage Company, as Storage Company, or defendants. A jury was called and acted in an advisory capacity only.

This is an action brought by plaintiff C. J. Wallace, against defendants, Henry Shore and the Water Supply and Storage Company, to recover a balance claimed by plaintiff to be due him for the loading of quarry rock and spall, used for the facing or rip-rapping of a reservoir dam of said Water Supply and Storage Company. From a judgment for plaintiff for $1,970.94 and $53.18 costs, defendants bring the case here alleging, (1) that the court erred in admitting evidence of a prior oral agreement which was at variance with the terms of the written contract, and (2) that the court erred in giving to the jury instruction No. 2.

The evidence discloses that defendant Shore had a contract with the Water Supply and Storage Company to rip-rap the face of a dam with rock and spall two feet thick; that Shore contracted with plaintiff to load the rock and spall on trucks at a quarry near Bellvue and that he also contracted with Pat Griffin for hauling said rock and spall, so loaded by plaintiff, from the quarry to defendant's dam seven miles away. The written agreement dated May 21, 1945, covering part of the terms of the contract between plaintiff and defendant Shore with respect to said work, was prepared by Shore and signed by plaintiff May 22, 1945, after he had begun the work of loading said rock and spall. Section 4 of said contract is as follows: "4—The party of the first part will pay to the party of the second part for the loading and hauling of the Rock and Spall, $1.25 (One Dollar Twenty Five Cents) per cubic yard measurement of the Engi-

neer of The Water Supply and Storage Co. and their payment to me, Except; That the party of the first part will make payment to Pat Griffin on the yard per load basis of .70c (Seventy Cents) per cubic yard plus federal tax, To be deducted from said $1.25 (One Dollar Twenty Five Cents) payments to be made the same as specified in paragraph 8 in other contract."

Pat Griffin was paid on the cubic yard per load basis for hauling and delivering 7485 yards. But on measurement of the engineer of the Water Supply and Storage Company the cubic yardage actually distributed two feet deep on the face of the dam was only 5622 cubic yards, which defendants claim as a basis for settlement with plaintiff.

Plaintiff claims that defendant Shore induced him to enter into said written agreement by orally promising him on or about May 19, 1945 that he, Shore, would so spread the rock and spall on the face of the dam that the load measurement of yardage hauled would be the same as, or come out even with, the dam measurement to be made by the engineer of the defendant the Water Supply and Storage Company, and that he relied on said promise in entering into said written contract. July 17, 1945 plaintiff had fully performed all his obligations under his contract with defendant Shore, but through unforeseen circumstances, not contemplated by plaintiff or Shore when their contract was made, additional quarry rock and spall had to be obtained from another quarry located some three miles farther from the dam than the quarry contemplated in the contract. Plaintiff and defendant Shore were unable to agree on a new contract for loading and hauling of rock and spall from the other quarry and plaintiff demanded payment of the balance due him for the labor already performed.

It appears that defendant Shore did not spread the rock and spall evenly over the face of the dam. The undisputed evidence showed that wherever depth measurements were taken, the depth was over two feet and

in some places two feet eight inches, as a result there was a shortage of about twenty-eight per cent between the truck load cubic yardage hauled and the last temporary estimate by the Storage Company's engineer for Shore. Said engineer's estimate was not based upon the actual amount of rock and spall in place but upon the area blanketed with rock and spall to a depth of two feet or more. His estimate was only a certification of compliance with the minimum requirements and disregarded all depth of the rock and spall blanket over two feet. Since the agreement between plaintiff and defendant Shore did not provide that the estimate of the company's engineer should be final and conclusive upon the parties, his estimates do not partake of the nature of a final judgment. *Maney v. Idaho Construction Co.*, 30 Ida. 111, 163 Pac. 297.

■ Prior Oral Agreement. There was evidence that before the written contract between plaintiff and defendant Shore was signed the question of "load cubic yard measurements and the dam measurements" was discussed and Shore agreed that he would make them come out even, and it was with this understanding that the contract was signed. Under those circumstances whether or not defendant Shore's promise was the inducing cause for the execution of the contract was a question which the trial court properly submitted to the jury for determination. *McCaffrey v. Mitchell*, 98 Colo. 467, 56 P. (2d) 926; *Creek v. Lebo Investment Co.*, 85 Colo. 357, 363, 276 Pac. 329.

■ Instruction No. 2. The court submitted to the jury the question of whether or not defendant Shore in connection with the contract for loading and hauling, promised plaintiff that he, Shore, would spread the rock and spall on the face of the dam so that the yardage measurement on the dam face would be the same or even with the load yardage. The jury answered the question "Yes."

The court also submitted to the jury the question of

what was the actual yardage on the face of the dam July 25, 1945 when plaintiff and Griffin had completed their loading and hauling. The jury's answer was 7485 cubic yards.

Both questions were properly propounded by the court to the jury. The answers were justified by the evidence and the court's findings and judgment for defendant based thereon is herewith approved.

The judgment is affirmed.