579 P.2d 87 (1978)
BUDGET SYSTEMS, INC., a Delaware Corporation, Plaintiff-Appellant,
v.
SEIFERT PONTIAC, INC., a Delaware Corporation, Defendant-Appellee.
No. 77-246.
Colorado Court of Appeals, Division 3.
February 23, 1978.
As Modified On Denial of Rehearing March 30, 1978.
*88 Kenneth C. Groves, Denver, for plaintiff-appellant.
Inman, Flynn & Coffee, P. C., Robert D. Inman, Denver, for defendant-appellee.
KELLY, Judge.
Budget Systems, Inc., sued Seifert Pontiac, Inc., for breach of contract, and appeals the judgment of the trial court granting Seifert's motion to dismiss at the close of Budget's case. Budget contends that, under the rule of Teodonno v. Bachman, 158 Colo. 1, 408 P.2d 284 (1965), the judgment in favor of Seifert was not warranted. We agree and therefore reverse.
Budget Systems, Inc., commenced this action after Seifert refused to repurchase 67 automobiles pursuant to a written contract entered into between Budget Rent-a-Car of Colorado, Inc.[1], and Seifert. Seifert justified its refusal to repurchase the automobiles on the basis that the written contract as modified by a prior course of dealing and a letter from Budget allowed it to reject those automobiles which had been driven in excess of 9000 miles. Consequently, Budget sold these cars elsewhere and sought to recover the difference between the sale price and the price it would have obtained had the cars been repurchased by Seifert.
This case is unusually postured because Budget called Seifert's vice president, Robert Solomon, as an adverse witness during its case-in-chief. Solomon's testimony reflects that, beginning in 1968, Phil Hahn, the independent owner of the local Budget franchise, entered into several oral agreements with Seifert for the purchase of automobiles to be used in his car rental operation. Each agreement provided that after a certain length of time, usually six months, the automobiles would be repurchased from Hahn if they had not been used for more than 6000 miles.
There is indication in the record that, in 1971, Budget purchased this franchise from Phil Hahn, and Phil's son, Dale Hahn, became the local manager. Budget insisted on a written contract to cover the purchase and repurchase of the rental cars. The *89 written contract entered into between Budget and Seifert did not place any restrictions on the number of miles the vehicles could be used before offering them to Seifert for repurchase.
Several months after the execution of this contract, Seifert became concerned about the mileage being accumulated on some of the vehicles. Following a meeting with Seifert's representative, the manager of Budget sent Seifert a letter, dated May 15, 1973, which summarized the meeting and stated, in part:
"It was further agreed that when one of your units begins to accumulate mileage in excess of 9000, that the time left in service of this vehicle will be negotiated."
In July 1973, a second written contract was entered into between Budget and Seifert. As in the earlier agreement, the July contract defined commercially unacceptable vehicles for the purpose of repurchase, but made no mention of a mileage limitation.
At the close of Budget's case, the trial court granted Seifert's motion to dismiss, finding that Budget had failed to make out a prima facie case of breach of contract. Although the written contract contained no mileage limitation, the court found that there was no breach by Seifert since the previous dealings between Phil Hahn and Seifert established that the cars would not be driven in excess of 6000 miles, and these dealings could be used to "supplement or qualify" the terms of the written agreement between Seifert and Budget. Additionally, based on Budget's letter of May 15, 1973, the trial court found that the agreement between Seifert and Budget did not require Seifert to repurchase a vehicle with more than 9000 miles unless Seifert had authorized the use of the vehicle for the extra miles.
Budget contends that, at the close of its case, the evidence was insufficient to establish that the written contract had been modified by a prior course of dealing between Budget and Seifert since the only testimony on this issue related to oral agreements negotiated by Phil Hahn. We agree.
The Uniform Commercial Code which governs this transaction provides in part:
"(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Section 4-1-205, C.R.S.1973 (emphasis added).
The code also defines a party as a "person who has engaged in a transaction or made an agreement within this title," § 4-1-201(29), C.R.S.1973, and recognizes that the term "party" includes a person who is acting through an agent. See § 4-1-201, C.R.S.1973, (Official Comment 29).
The evidence here is insufficient to support a finding that a prior course of dealing had been established between Budget and Seifert. Although Phil Hahn did enter into prior agreements with Seifert, the record does not show whether he did so as Budget's agent. We are unable to tell from the record who owned this franchisePhil Hahn or a corporation owned by Phil Hahn. Absent evidence to the contrary, the purchaser of a business does not adopt the seller's prior course of dealing with third parties. However, if, on retrial, the evidence shows that Budget purchased a corporation which owned the franchise, and Phil Hahn was an agent for that corporation, then the agreements negotiated by Phil Hahn would substantiate the existence of a prior course of dealing between that corporation and Seifert.
Further, if Dale Hahn, who was Budget's agent, entered into agreements with Seifert which contained a mileage limitation, a prior course of dealing between Budget and Seifert could have been established. However, it is impossible to tell from Solomon's testimony whether Dale Hahn entered into any agreements with Seifert. Solomon's references to "Mr. Hahn" make it a matter of conjecture whether he was referring to Phil Hahn or Dale Hahn. This confused state of the record is insufficient to sustain the trial court's finding that a prior course of dealing existed between Seifert and *90 Budget. See H. B. Bolas Enterprises v. Zarlengo, 156 Colo. 530, 400 P.2d 447 (1965).
The trial court also rested its findings on its interpretation of Budget's letter of May 15 as imposing a mileage limitation on vehicles offered to Seifert for repurchase. The court erred in finding this letter gave Seifert the right to reject vehicles which had in excess of 9000 miles unless the extra miles were approved by Seifert in advance. A reviewing court is not bound by the trial court's interpretation of a written document. See Radke v. Union Pacific R. R., 138 Colo. 189, 334 P.2d 1077 (1958); M. R. Mansfield Realty, Inc. v. Sunshine, Colo.App., 561 P.2d 342 (1976). On its face, Budget's letter of May 15 does not impose an absolute mileage limitation, but is merely an agreement to negotiate the continued use of a vehicle after it has been used for 9000 miles.
For the foregoing reasons, the judgment in favor of Seifert was not justified at the close of Budget's evidence and Budget's case should not have been dismissed. Teodonno v. Bachman, supra.
Since this case must be retried and the question may again arise, we briefly address Budget's contention that, if established, a prior course of dealing including a mileage limitation is not admissible since it is inconsistent with the written contract. The test of admissibility of evidence of a prior course of dealing is not whether the contract appears to be complete in every detail, but whether the proffered evidence of course of dealing reasonably can be construed as consistent with the express terms of the agreement. See Columbia Nitrogen Corp. v. Royster Co., 451 F.2d 3 (4th Cir. 1971); § 4-1-205(4), C.R.S. 1973. Evidence which contradicts or negates the terms of a written agreement is inadmissible. See MacGregor v. McReki, 30 Colo.App. 196, 494 P.2d 1297 (1971).
Here, the written contract does not deal with mileage. Therefore, on retrial, if the evidence establishes a prior course of dealing which included a mileage limitation, such evidence will be admissible since it does not directly contradict or negate the terms of the written agreement but merely supplements it, as allowed by § 4-2-202, C.R.S.1973. See Amerine National Corp. v. Denver Feed Co., 493 F.2d 1275 (10th Cir. 1974). See also J. White & R. Summers, Uniform Commercial Code § 2-10.
The judgment is reversed and the cause remanded for a new trial.
VanCISE and STERNBERG, JJ., concur.
NOTES
[1] Budget Rent-a-Car of Colorado, Inc., was, pursuant to statute, merged with Budget Systems, Inc., the plaintiff in this action. "Budget" refers to both.