**Carla HENSLEE, Appellant,**

v.

**CAMERON MUTUAL INSURANCE COMPANY, Respondent.**

**No. SD 29683.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 11, 2009.

Joshua P. Myers, Page Cagle, LLC, St. Louis, for Appellant.

Monte P. Clithero and Kevin M. Fitz-Gerald, Taylor, Stafford, Clithero, FitzGerald & Harris LLP, for Respondent.

DANIEL E. SCOTT, Chief Judge.

On October 5, 2006, a beauty salon ("Salon") bought a Cameron Mutual insurance policy that expressly excluded professional services coverage. Appellant's scalp was severely burned two months later, on December 6, 2006, during a hair treatment at Salon.

Nearly two months after that, Salon added professional liability coverage for an additional premium. The change request stated a February 1, 2007 effective date in capital letters, as did the formal policy endorsement adding "Barbers and Beauticians Professional Liability" coverage.

Shortly thereafter, Appellant sued Salon for her December 2006 injuries. Salon did not answer or defend. Appellant took a $350,000 default judgment on May 2, 2007 and sought to garnish Salon's policy. Citing the professional services exclusion at the time of the accident, the insurer sought and obtained summary judgment.[1] Our review is *de novo. Brown v. Simmons*, 270 S.W.3d 508, 511 (Mo.App.2008).

Conceding that the December 2006 accident and injuries involved professional services initially excluded from the policy's coverage, Appellant urges two theories for a different result following the February 2007 endorsement.[2]

### Retroactivity

█ Appellant claims the endorsement was retroactive because its heading (which also lists the policy number, named insured, and agent) says "POLICY PERIOD: FROM 10–5–06 TO 10–5–07." Yet, Salon's change request included, and the

endorsement expressly stated, a February 1, 2007 effective date.

The date the endorsement or rider was issued determines not only the nature of the coverage but also *defines the period of coverage under its terms.* For example, while an endorsement might add coverage of a particular type of risk there is still no coverage if the loss from such a risk occurred before the effective date of the endorsements.

2 Couch on Insurance 3d § 22:2 (1995)(emphasis ours). *See also Kirkpatrick v. Colorado Farm Bureau Mut. Ins. Co.*, 839 P.2d 514 (Colo.App.1992), in which the plaintiff bought auto insurance for her Dodge in January, and wrecked her Mercury on June 6. Two weeks later, she transferred coverage from the Dodge to the Mercury, being told that the prior accident would not be covered. She claimed retroactive coverage anyway, because her amended declaration sheet showed the policy period as "January 5, 1989 to July 5, 1989." The court disagreed:

The plaintiff has cited no legal authority to support her argument that transfer of coverage should be given retroactive effect. There is, however, authority to support the insurer's contention that the effective date of the endorsement transferring coverage is the date specified on the endorsement, in this case a date after the June 6th accident. *See Martz v. Union Labor Life Insurance Co.*, 757 F.2d 135 (7th Cir.1985); J. Appleman, *Insurance Law & Practice* § 4293 (Buckley ed.1979). We find this authority persuasive and follow it.

---

1. Appellant dismissed her garnishment claims against Salon.

2. Perhaps due to their novelty, few cases (in or outside Missouri) meaningfully address these theories, or so it seems from the parties' briefs and our own research.

*Id.* at 516. Appellant's retroactivity argument fails likewise.

### Trigger

■ Alternatively, Appellant contends that Salon was not "legally obligated"[3] to pay damages until the May 2007 default judgment. "Thus," she claims, "common sense would dictate that the Court should look to the policy and all endorsements in place at that time," arguing that what "triggered coverage under the policy" was not the accident or her injuries, but the judgment ultimately entered.

■ Appellant cites no persuasive authority for these assertions, and her "trigger" interpretation in particular would turn insurance law on its head.[4] The policy's relevant trigger was Appellant's December 6 injury,[5] with the provision cited by Appellant describing the "sums" to be paid if the policy applies. But as noted above, the endorsement's February 1 effective date "define[d] the period of coverage under its terms." *Couch, supra.* Although Salon bought additional coverage four months into the policy period, "there is still no coverage if the loss from such a risk occurred before the effective date of the endorsements." *Id.*[6] We reject Appellant's trigger argument as well, and affirm the judgment.

RAHMEYER, J., and LYNCH, P.J., concur.

---

3. One policy provision reads: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies."

4. *See, e.g.,* RSMo § 379.195 (2000)(insurer's liability, if any, becomes absolute whenever a loss occurs on account of a casualty covered by policy); 30 Missouri Practice, Insurance Law & Practice §§ 7.12 & 7.14 (1997 & 2008 Supp.). "Theoretically, coverage under an 'occurrence'-type policy can take place either at the time of the wrongful act or at the time the plaintiff was injured or damaged. In almost all such policies, however, the trigger of coverage is defined to be the date of the bodily injury or property damage." 2 Allan

D. Windt, INSURANCE CLAIMS AND DISPUTES § 11:4 (5th ed.2007)(via Westlaw).

5. The policy, in relevant part, applies to bodily injury "caused by an 'occurrence' that takes place … during the policy period," and defines "occurrence" as "an accident...."

6. " 'By its very nature, insurance is fundamentally based on contingent risks which may or may not occur.... Where the insured has evidence of a probable loss when it purchases a … policy, the loss is uninsurable under that policy (unless the parties otherwise contract) because the "risk of liability is no longer unknown." ' " *United Capitol Ins. Co. v. Hoodco, Inc.,* 974 S.W.2d 572, 576 (Mo.App.1998)(quoting *Outboard Marine v. Liberty Mut. Ins.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1210 (1992)).